**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| TriWest Healthcare Alliance Corporation, | No. CV-19-02052-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Geneva Woods Pharmacy LLC, | |
| Defendants. | |

Pending before the Court is Defendant Geneva Woods Pharmacy LLC's ("Geneva Woods") Motion to Dismiss or Transfer Venue. (Doc. 12, "Mot." or "Motion".) Plaintiff TriWest Healthcare Alliance Corp ("TriWest") responded and Defendant replied. (Doc. 13, "Resp."; Doc. 15, "Repl.".) Neither party requested oral argument and the Court elects to resolve the Motion without it. *See* LRCiv 7.2(f). Defendant moves to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. §§ 1391(b) and 1406(a), or alternatively, to transfer the case to the District of Alaska under 28 U.S.C. §§ 1406(a) or 1404(a). (Mot. at 1.) Having found venue improper in the District of Arizona, the Court grants Geneva Woods' Motion as it relates to transferring the case to the District of Alaska under 28 U.S.C. § 1406(a).

## I. BACKGROUND

TriWest is a United States Department of Veteran's Affairs ("VA") contractor incorporated in Delaware with its principal place of business in Phoenix, Arizona. (Doc. 1, "Compl." ¶¶ 1, 7.) In this capacity, TriWest contracted with Geneva Woods to provide home infusion therapy services to eligible veterans in Alaska. (*Id.* ¶ 9.) Per the agreement,

1  Geneva Woods accepted the amount payable under the Alaska VA Medical Center's
2  published fee schedule as payment for its services. (*Id.* ¶¶ 11-12.) Geneva Woods
3  subsequently provided services to eligible Alaska veterans and submitted payment claims
4  to TriWest's third-party payment administrator, WPS Health Solutions ("WPS"). (*Id.* ¶ 13.)
5  WPS is in Madison, Wisconsin. (Doc. 12-1 5.) When Geneva Woods submitted its payment
6  claims, WPS was authorized to pay claims on TriWest's behalf, but it could not modify
7  payment terms. (Compl. ¶ 13.) Geneva Woods is an Alaska limited liability company with
8  its principal place of business in Anchorage, Alaska. (*Id.* ¶ 3.)

The impetus for this lawsuit is that TriWest discovered an alleged error in WPS' claims payment system in 2018, resulting in $1,338,403.43 of overpayments to Geneva Woods for services rendered to eligible Alaska veterans. (*Id.* ¶¶ 14-15.) TriWest demanded Geneva Woods return the overpayment, but it refused. (*Id.* ¶¶ 16-18.) TriWest then filed its Complaint against Geneva Woods alleging breach of contract and unjust enrichment for overbilling TriWest and refusing to return the overpayment. (*See id.* ¶¶ 19-32.) At issue here, the Complaint alleges that "[v]enue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to TriWest's claims occurred in this district and Defendants are subject to the Court's personal jurisdiction with respect to this action." (*Id.* ¶ 5.) Defendant disagrees, and moves to dismiss for improper venue, or in the alternative to transfer the case to the District of Alaska. (Mot. at 1.)

**II.    LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(3), a party may move to dismiss an action that has been brought in an improper venue. When venue is improper, the Court must either dismiss the case or, "if it be in the interest of justice, transfer [the] case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). When venue is proper, the Court may nevertheless also transfer the case "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a).

Section 1391 governs venue for civil actions in federal district courts. 28 U.S.C. § 1391. That statute requires civil actions be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

When a defendant challenges venue, the plaintiff bears the burden of showing that venue is proper. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). If venue is improper, the decision to dismiss or transfer a case under 28 U.S.C. § 1406(a) or transfer under § 1404(a) lies within the district court's discretion. *See Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1136-37 (9th Cir. 2004) (reviewing district court's transfer under 28 U.S.C. 1406(a)); *see also Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 842 (9th Cir. 1986) (analyzing district court's transfer under 28 U.S.C. § 1404(a)).

### III. DISCUSSION

The Court first evaluates whether venue is proper in the District of Arizona under § 1391; then, if venue is improper, whether dismissal or transfer is appropriate under § 1406(a), or if venue is proper, whether transfer is appropriate under § 1404(a).

#### A. <u>Venue is Improper in Arizona.</u>

Geneva Woods argues venue is improper in Arizona because a substantial part of the events giving rise to TriWest's breach of contract and unjust enrichment claims occurred in Alaska and not in Arizona, as required by 28 U.S.C. § 1391(b)(2). (Mot. at 2; Repl. at 2-5.) Geneva Woods also argues venue is improper under 28 U.S.C. § 1391(b)(1) because it is not an Arizona "resident" under 28 U.S.C. § 1391(c)(2). (Repl. 5-8.) TriWest disagrees—it claims venue is proper in Arizona not only because a substantial part of the

events occurred here, but also because Geneva Woods is a "resident" of Arizona. (Resp. at 6-10, 10-12.)

### 1. A Substantial Part of the Events Giving Rise to TriWest's Claims Occurred Outside Arizona.

Under 28 U.S.C. § 1391(b)(2), the Court evaluates venue by looking to where a *substantial* part of the acts or omissions giving rise to Plaintiff's claims occurred. "[F]or venue to be proper, significant events or omissions material to the plaintiff's claims must have occurred in the district in question, *even if other material events occurred elsewhere*." *Xcentric Ventures LLC v. Borodkin*, No. CV-11-1426-PHX-GMS, 2012 WL 692976, at *7 (D. Ariz. Mar. 1, 2012). "Substantial" does not mean the "majority of" or even the "most" events giving rise to the claims. *See Texmo Oil Co. Jobbers Inc. v. Y Travel LLC*, No. CV-13-08290-PCT-PGR, 2014 WL 2617248, at *2 (D. Ariz. June 12, 2014) (fewer *significant* events in a state, even if other material events occurred elsewhere, may nevertheless be *substantial* enough for proper venue); *see also Leroy-Garcia v. Brave Arts Licensing*, No. C 13-01181 LB, 2013 WL 4013869, at *12 (N.D. Cal. Aug. 5, 2013) (*substantial* is not *most*).

As a preliminary matter, TriWest incorrectly attempts to recharacterize the basis for its claims in arguing that "the substantial events at issue occurred in Arizona when CVS denied TriWest's recoupment claim on [Geneva Woods'] behalf." (Resp. at 2.) But its harm is from WPS' overpayment and Geneva Woods' overcharging and refusal to pay it back, not CVS' failure to remediate the overpayment after the breach. TriWest's attempts to resolve its dispute with CVS does not change the crux of the lawsuit, which is a dispute between Geneva Woods and TriWest concerning an agreement with the intended performance outside Arizona. *See Decker Coal*, 805 F.2d at 842 ("[T]he spirit of § 1391(a) is better served in this case if venue for a claim based on breach of contract be the place of intended performance rather than the place of repudiation."). CVS' repudiation on Geneva Woods behalf certainly does not alter the principal place of intended performance.

The Court also finds venue improper under 28 U.S.C. § 1391(b)(2) because

- 4 -

numerous events giving rise to TriWest's claims, including the agreement's place of intended performance, occurred elsewhere. *See Borodkin*, 2012 WL 692976, at *7. For instance, Geneva Woods allegedly overcharged eligible veterans in Alaska for pharmaceutical services provided there. (Doc. 12-1 at 15 ¶¶ 5-6.) There is no evidence that Geneva Woods treated any veterans residing in Arizona. Moreover, WPS, TriWest's third-party payment administrator, overpaid Geneva Woods in Alaska from its principal office in Wisconsin, not Arizona. (Compl. ¶¶ 13-15; Doc. 12-1 at 5.) Third, Geneva Woods refused to return the allegedly overpaid charges from its Alaska office. Absent Geneva Woods overcharging patients who live in Alaska, providing services in Alaska to eligible veterans, and refusing to repay TriWest from Alaska or WPS' overpayment to Geneva Woods in Alaska from Wisconsin, TriWest's breach of contract and unjust enrichment claims would be nonexistent. Again, to be sure, each of these events occurred outside Arizona.

TriWest also argues the Court should consider more than just the place of contract performance to determine whether venue is proper here. (Resp. at 6-9.) It asks the Court to also consider the location of the execution and negotiation of the contract, the location where the effects of the breach are felt, and the fact that Geneva Woods communicated from Alaska with TriWest in Arizona.[1] (*Id.*) TriWest is correct that the Court should analyze more than just the place of contract performance in determining whether venue is proper. *See Borodkin*, 2012 WL 692976, at *7 (Analyzing events other than just the "principal event giving rise to [p]laintiff's claims" in determining venue). Here too, as in *Borodkin* and as discussed above, the Court has considered more than just the place of the contract's performance, including, *inter alia*, WPS' overpayment from Wisconsin and how all Geneva Woods' patients are in Alaska. TriWest fails to highlight any significant event in Arizona considering the numerous other events forming the basis of its claims occurring elsewhere and electronic non-substantial communications *relating to* the crux of the lawsuit are unavailing to establish proper venue.

---

[1] TriWest provides no evidence of where any agreement negotiation or execution occurred.

Accordingly, venue in this Court is improper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to TriWest's breach of contract and unjust enrichment claims occurred outside Arizona.

### 2. Geneva Woods is Not a "Resident" of Arizona.

Aside from Section 1391(b)(2), venue may also be proper under 28 U.S.C. § 1391(b)(1) "in . . . a judicial district in which any defendant resides." For this statute, a corporation "shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question[.]" 28 U.S.C. § 1391(c)(2). Therefore, the venue question under this prong is whether this Court has personal jurisdiction over Geneva Woods. *Id.*

"When no federal statute governs personal jurisdiction, the district court applies the law of the forum state." *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 602 (9th Cir. 2018). Arizona's long-arm jurisdictional statute is co-extensive with federal due process requirements; therefore, analyzing personal jurisdiction under Arizona law is the same as the analysis under federal due process. *See, e.g.*, *Uberti v. Leonardo*, 892 P. 2d 1354, 1358 (Ariz. 1995) (analyzing personal jurisdiction in Arizona under federal law). "Due process requires that a nonresident Defendant have sufficient minimum contacts with the forum state so that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Beneco Sys., LLC v. Pension Corp. of Am., Inc.*, No. CV-09-2612-PHX-SRB, 2010 WL 11515481, at *2 (D. Ariz. Aug. 16, 2010) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted)).

"There are two categories of personal jurisdiction: (1) general jurisdiction and (2) specific jurisdiction." *Freestream*, 905 F.3d at 602 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–15 (1984)). In analyzing specific jurisdiction, the Court undertakes a three-part test—referred to as the minimum contacts test—"to determine whether a defendant has sufficient contacts with the forum to warrant the court's exercise of jurisdiction[.]" *Freestream*, 905 F.3d at 603.

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Id.*; *see Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) (applying similar test). The plaintiff bears the burden of satisfying prongs one and two. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004); *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (Plaintiff must show personal jurisdiction exists). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

        a. <u>Geneva Woods Neither Purposefully Availed Itself In Nor Directed Its Activities at the District of Arizona.</u>

Under this prong, TriWest must show that Geneva Woods "either (1) 'purposefully availed' [itself] of the privilege of conducting activities in the forum, or (2) 'purposefully directed' [its] activities toward the forum." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) (quoting *Schwarzenegger*, 374 F.3d at 802). The purposeful availment requirement ensures that "a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475 (internal quotations omitted). "Purposeful availment" is rooted in the defendant's "affirmative conduct allowing or promoting the transaction of business within the forum state." *Gray & Co. v. Firstenberg Mach. Co., Inc.*,

913 F.2d 758, 760 (9th Cir. 1990).

That a non-resident defendant has a contract with a resident of the forum state does not suffice *on its own* to confer personal jurisdiction. *Gray*, 913 F.2d at 760 (citing *Burger King*, 471 U.S. at 478); *see Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir. 1991) (same). In contract cases, specific jurisdiction hinges on considerations such as: (1) prior negotiations, (2) contemplated future consequences, (3) the terms of the contract, and (4) the parties' course of dealing. *Gray*, 913 F.2d at 760 (citing *Burger King*, 471 U.S. at 479). In the Ninth Circuit, "ordinarily 'use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state.'" *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985) (quoting *Thomas. P. Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica*, 614 F.2d 1247, 1254 (9th Cir. 1980)).

TriWest argues Geneva Woods purposefully availed itself in Arizona because it "sent emails, initiated phone calls, and sent letters . . . directed towards TriWest in Arizona . . . [and] sent patient and reimbursement information to TriWest in Arizona." (Resp. at 11; *see id.* at 12 (arguing Geneva Woods' "transmittal of reimbursement information, correspondence between the parties, TriWest's calculations of the overpayments" satisfies the test).) It further argues that but for "TriWest's Arizona based claim management and calculations, there would be no cause of action."[2] (*Id.* at 12.) Geneva Woods again disagrees—it claims the contractual arrangement with TriWest is insufficient by itself to show purposeful availment and that its communications with TriWest about the arrangement are similarly insufficient. (Repl. at 6.)

As explained above, Geneva Woods' "use of the mails, telephone, or other

---

[2] Geneva Woods claims TriWest cannot satisfy the minimum contacts test by showing *TriWest* has sufficient contacts with Arizona, (Repl. at 6). The Court agrees with this argument. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014) (noting how Supreme Court "consistently reject[s] attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State[]'"); *see also Helicopteros*, 466 U.S. at 417 ("[U]nilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State"). TriWest is incorrect to the extent that its operations in Arizona establish Geneva Woods' minimum contacts here.

international communications simply do not qualify as purposeful activity invoking the protection of the [forum] state." *See Peterson*, 771 F.2d at 1262. Moreover, just because Geneva Woods contracted with TriWest, an Arizona company, does not mean this Court may automatically exercise personal jurisdiction over it. *See Gray*, 913 F.2d at 760. TriWest fails to provide any evidence regarding where the contractual agreement was negotiated, or any evidence of Geneva Woods otherwise availing itself in Arizona. Geneva Woods' attenuated, non-meaningful contacts with Arizona or simple contractual agreement with an Arizona-based company do not permit this Court to exercise personal jurisdiction over it. *See Peterson*, 771 F.2d at 1262. Further, where TriWest identified the alleged overpayments to Geneva Woods is not relevant to *Geneva Woods'* minimum contacts with Arizona. (*See* Resp. at 11.) If this were the case, wherever a plaintiff recognized it was harmed would be enough to hail a defendant to that forum. *See Burger King*, 471 U.S. at 475.

Additionally, and contrary to TriWest's assertion, (*see* Resp. at 12), the Court does not find that Geneva Woods consented to this Court's personal jurisdiction over it merely because it failed to formally file a Rule 12(b)(2) motion. As Geneva Woods argues, even though it did not file a Rule 12(b)(2) motion, it "stated in its [12(b)(3)] Motion that '[i]t is not registered to do business in Arizona, does not conduct business in Arizona, and had no reason to expect it would have to defend a lawsuit in Arizona.'" (Repl. at 7 (quoting Mot. at 9).) These explicit statements and Geneva Woods' implicit argument that this Court is not a proper venue illustrate its lack of consent to this Court's exercise of personal jurisdiction over it even though it did not file a motion.

Based on the above, the Court finds TriWest has failed to demonstrate Geneva Woods' conduct satisfies the purposeful availment prong for the "minimum contacts" test. As a result, the Court need not analyze the second prong, or evaluate whether Geneva Woods has made a showing that the Court's exercise of jurisdiction over it would be unreasonable under the last prong. Accordingly, venue is also improper in Arizona under

28 U.S.C. § 1391(b)(1).[3]

In conclusion, venue is improper in Arizona because a substantial part of the events giving rise to TriWest's claims occurred outside this state and because Geneva Woods is not a "resident" of Arizona.

### B. Transfer to the District of Alaska is Appropriate Under 28 U.S.C. § 1406(a).

Even if the Court had personal jurisdiction over Geneva Woods, dismissal or transfer for improper venue is appropriate under 28 U.S.C. § 1406(a). *See Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1181 (9th Cir. 2004) ("A defendant over whom personal jurisdiction exists but for whom venue is improper may move for dismissal or transfer for improper venue under 28 U.S.C. § 1406(a)."). Section 1406(a) states that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division which it could have been brought." 28 U.S.C. § 1406(a). The question under this statute here is whether to dismiss or transfer. *Id.*

Both parties dispute whether dismissing the case under 28 U.S.C. § 1406(a) is appropriate. (Mot. at 7-11; Resp. at 13.) TriWest argues dismissal is unwarranted because venue is proper in Arizona, but also that if it is not, a transfer instead of dismissal is in the interest of justice so it "will not have to refile its action and can more efficiently receive a resolution on the merits of the case." (Resp. at 13.) TriWest *does not* argue that the District of Alaska cannot hear the case. Geneva Woods simply claims "[t]he Court should dismiss the case for improper venue." (Mot. at 7.)

The Court will not dismiss the case even though it lacks proper venue here because

---

[3] Because the Court lacks personal jurisdiction over Geneva Woods, 28 U.S.C. § 1391(b)(3) is also unavailable to demonstrate proper venue here. That section states that "if there is no district in which an action may otherwise be brought[,]" then the action may be brought in "any judicial district in which [Geneva Woods] is subject to the court's personal jurisdiction with respect to such action." *Id.* Indeed, even if the Court had personal jurisdiction over Geneva Woods, TriWest concedes the case could be brought in another district. (*See* Resp. at 13 ("if this Court finds that venue is improper, TriWest respectfully request that it transfer the action to a proper venue in lieu of dismissal.").) For this reason, § 1391(b)(3) is equally unavailable in this case.

neither party disputes whether the District of Alaska can hear it. To be sure, TriWest only argues that the case should remain in Arizona, not that the District of Alaska is an improper venue. (*See* Resp. at 13-17; *see also* Repl. at 9.) Defendant similarly argues the District of Alaska is a proper venue for this action, albeit under 28 U.S.C. § 1404(a). (*See generally* Resp. at 8-11.) Accordingly, since an alternate forum to hear the case exists, a transfer, rather than dismissal, would conserve both the parties' and the federal courts' scarce resources.

### IV. CONCLUSION

Venue is improper in the District of Arizona. As a result, transfer to the District of Alaska is appropriate in lieu of dismissal under 28 U.S.C. § 1406(a) as explained above. Neither party disputes whether the case may be heard in the District of Alaska.

Accordingly,

**IT IS ORDERED GRANTING** Defendant Geneva Woods Pharmacy, LLC's Motion to Dismiss or Transfer Venue (Doc. 12).

**IT IS FURTHER ORDERED** that the Clerk of Court transfer this case to the District of Alaska.

Dated this 15th day of January, 2020.

_____
Honorable Susan M. Brnovich
United States District Judge